[No. 13187-1-II.   Division Two.   March 9, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY TRAMELL SMITH, *Appellant*.

*Robert G. Meyers, Andrew R. Hay,* and *Girolami, Meyers & Gormly,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn-Brintnall, Senior Appellate Deputy,* for respondent.

ALEXANDER, J. — Gregory Tramell Smith appeals an exceptional sentence of 500 months imposed upon him in Pierce County Superior Court, after his conviction on a charge of murder in the first degree. He contends that the sentencing court wrongly based the exceptional sentence on what it found was his "future dangerousness" and his acts "in furtherance of a criminal enterprise." Although we conclude that the sentencing court erred in relying on future

dangerousness as a basis for the exceptional sentence, we nevertheless affirm.

A jury found Smith guilty of one count of murder in the first degree and two counts of attempted murder in the first degree.[1] The trial judge imposed a standard range sentence on the two counts of attempted murder, and imposed an exceptional sentence of 500 months for the first degree murder conviction. The sentence for first degree murder was 84 months greater than the high end of the standard range for that offense, taking into consideration Smith's criminal history. In support of the exceptional sentence, the sentencing court made the following findings of fact:

I.

On or about March 24, 1989, Gregory T. Smith, defendant, was a member of the Hilltop Crips Gang (HTCG), Tacoma, WA.

. . . .

III.

As gang members, defendants were involved in the sale and distribution of "crack" cocaine; e.g., Mr. Smith had been distributing "crack" to lower level dealers for sale on the streets. Those dealers included persons within the gang such as Demarcus Mikes (16) and others outside the gang such as Nina, a young, black female not further identified.

IV.

Defendants were involved in the protection of gang turf (geographic area) and gang business (illicit drug trade).

V.

The gang symbolized and encouraged a criminal life style which emphasized violence.

(a) Initiation rites into the gang consisted of beating the prospective member to determine his physical and mental toughness; e.g., codefendant Demarcus Mikes was beaten into unconsciousness at his induction by gang members.

(b) Gang members, to include Smith and Massey, accumulated weapons and ammunition to project the gang's power. Mr. Massey possessed an illegal, sawed-off shotgun and Mr. Smith possessed a high-powered, 30.40 caliber rifle and a handgun.

(c) On the night of March 23, 1989, Nina, a youthful drug dealer on the Hilltop area of Tacoma, pulled a gun to defend herself against Mr. Smith who had confronted Nina for money

---

[1]Smith was charged together with Darrell J. Massey. Massey was also convicted of murder in the first degree, but he is not appealing his conviction or sentence.

owed for drugs fronted to Nina. Immediately thereafter, Smith hurried home to arm himself with his .38 handgun. He returned brandishing his weapon in search of Nina and telling others he would kill her (Nina).

(d) Just prior to the fatal shooting, defendants Smith and Massey showed some resolve to shoot a police officer but were dissuaded by codefendants Mikes and Broughton. The officer had been alongside the road performing a traffic stop on an unknown third party.

(e) After the shooting of victim Harris, defendant Smith showed an intent to shoot a truck driver who had ostensibly "cut-off" defendants while driving on the freeway.

(f) Defendant Massey held a handgun to the head of Jessica Bojarski during an extended period following "negotiations" for use of Bojarski's car with regards to the driveby shooting mission. Mr. Massey had asked both codefendant Broughton, the driver, and Ms. Bojarski if they would "like to die" while holding the weapon against Bojarski's head.

VI.

On or about March 24, 1989, defendants went on their "mission" to do a "driveby" of "slobs" on the east side of Tacoma; the immediate purpose was to seek and kill rival Bloods gang members.

VII.

Defendants opened fire with numerous weapons at a GMC 4X4 vehicle with three occupants, after construing a "wave" from a passenger in the vehicle as a Bloods' hand sign.

VIII.

The long-term purpose of the shooting was to strengthen the gang; i.e., to protect the HTCG's "turf" and drug income by intimidating rivals and projecting an image of strength and violence.

IX.

The somewhat random acts of violence by defendants on March 24, 1989, was a form of terrorism, designed to intimidate foes of the HTCG in furtherance of the gang's criminal purposes centered on illicit drugs sales.

From these findings the trial court made the following conclusions of law in support of the exceptional sentence:

I.

The terrorist-type shooting by defendants was in furtherance of a criminal enterprise, the Hilltop Crips Gang, to project its power and drug empire through violence. This is a substantial and compelling reason to sentence outside the standard range.

II.

By their acts, defendants have shown a substantial propensity for future dangerousness, necessitating a longer period of

incarceration for protection of the community. This is a substantial and compelling reason to sentence outside the standard range. . . .

■ Smith does not assail the sentencing court's findings of fact, but he contends that the reasons relied upon by the sentencing court do not justify the sentence. A reviewing court may reverse a sentence that is outside the standard range if the reasons supplied by the sentencing judge do not justify a sentence outside the standard range for the offense. *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990). The "matter of law" standard of review applies in determining whether reasons justify an exceptional sentence. *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987). In order to determine if an exceptional sentence was justified here, we will examine each reason given by the sentencing court for the sentence.

## I
### FUTURE DANGEROUSNESS

■ Smith correctly asserts that a sentencing court may not rely on future dangerousness of the defendant as a reason for imposing an exceptional sentence in a nonsex offense case. *State v. Barnes*, 117 Wn.2d 701, 711, 818 P.2d 1088 (1991). In light of *Barnes*, conclusion of law 2 is insufficient, as a matter of law, to support the exceptional sentence.

## II
### ACTS IN FURTHERANCE OF A CRIMINAL ENTERPRISE

Smith's counsel challenges conclusion of law 1, contending that the trial court wrongly considered Smith's gang membership against him when it imposed the exceptional sentence. He argues that Smith's membership in a gang may not be relied on by the sentencing court because the membership (1) did not relate to the crime, and (2) is a "constitutionally impermissible factor". If Smith's sentence had been enhanced simply because he belonged to a gang, Smith's argument might have merit. The trial court's conclusion was not, however, that broad. It concluded that Smith's conduct in shooting "slobs" in order to further the

reputation of the criminal enterprise, the gang, as a powerful and violent organization, was a basis for the exceptional sentence. This reasoning, which clearly finds support in the trial court's unchallenged findings of fact, was a proper basis for enhancing the standard range sentence.

We disagree with Smith's argument that the exceptional sentence violates RCW 9.94A.340, which implies that sentencing factors must relate to the crime.[2] As we have noted above, it is clear from the sentencing court's findings that Smith's membership in the Hilltop Crips Gang related directly to the crime, in that the murder was committed to further the aims of the gang.

Smith argues, additionally, that it was impermissible for the sentencing court to consider Smith's gang membership as a factor supporting an exceptional sentence because it impinged on his constitutional right to freedom of association as guaranteed by the United States Constitution. While we do not necessarily disagree with Smith's contention that persons should not receive a criminal penalty merely because they belong to an organization, regardless of what we may think of the organization, we do not agree that the sentencing court may not consider a person's motivation for criminal conduct. Here, Smith was acting to further the criminal enterprise. It is that motivation, to further the illegal activities of the gang, that underlies the increased sentence, not the mere fact of gang membership. Consideration of Smith's motivation by the sentencing court did not impinge on Smith's right of freedom of association.

In reaching the conclusion that we do, we observe that a community faces a greater peril from collective criminal activity than it does from criminal activity by one individual. A criminal enterprise which is composed of a number of persons, whether it is known as a gang, a mob, or a criminal syndicate, poses a great challenge to law

---

[2]RCW 9.94A.340 provides:

"The sentencing guidelines and prosecuting standards apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant."

enforcement agencies. Furthermore, the specter of such organized wrongdoing tends to make the general public feel that it is held hostage by the criminal enterprise. In cases such as this, where specific criminal activity is motivated by the desire of the criminal to further the illegal objectives of the gang, by projecting its image as a terrorist organization, an appropriate basis for an exceptional sentence is established.[3]

■ Although we have indicated that one of the reasons given by the sentencing court for the exceptional sentence, future dangerousness, was incorrect, we nevertheless affirm the sentence because the remaining reason is sufficient, by itself, to support the sentence imposed. *State v. Farmer*, 116 Wn.2d 414, 805 P.2d 200 (1991).

Affirmed.

MORGAN, A.C.J., and SEINFELD, J., concur.

---

[3]We are aware of several federal cases which have indicated that in appropriate circumstances, membership in an organized crime syndicate provides a basis for departing from federal sentencing guidelines. None of these cases discuss the constitutional issues raised by Smith. *See United States v. Schweihs*, 733 F. Supp. 1174, 1179 (N.D. Ill. 1990) (defendant's sentence was not enhanced because of his membership in organized crime, but, rather, because he "used that association to carry out the crimes of which he has been convicted."); *United States v. Sweeting*, 933 F.2d 962, 966 (11th Cir. 1991) (defendant shown to be a member of a violent street gang responsible for drive-by shooting; aggravating circumstances included . . . "the criminal purpose in possessing the firearms to carry on the activities of their narcotics trafficking gang . . .").