[No. 27246-2-I.    Division One.    April 12, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL J.
RILEY, JR., *Appellant.*

*Irene Tanabe* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Sally Olsen, Deputy,* for respondent.

COLEMAN, J. — Michael Riley, Jr., appeals his judgment and sentence for one count of assault in the second degree, contending that the Superior Court erred in failing to enter findings of fact and conclusions of law concerning its suppression rulings, that prosecutorial misconduct deprived him of his right to a fair trial, and that the Superior Court erred in imposing an exceptional sentence. We affirm.

On May 27, 1990, about 1:30 a.m., Officers Hay, Howard, and Smith were on patrol, traveling eastbound on East Union Street in Seattle. Officer Hay was a part of the East Precinct Gang and Narcotics Unit and had received training in gang recognition. As they neared the intersection of East Union Street and 23rd Avenue, Officer Hay noticed a group of seven males whom he recognized as members of the Black Gangster Disciples or BGD's. The seven males were standing on the southwest corner of the intersection and were looking southward down 23rd Avenue. Then, Officer Hay heard three gunshots fired in rapid succession from around the corner to the south and observed the BGD's scattering. Officer Hay accelerated around the corner and saw Michael Riley, Jr., standing on the sidewalk facing the area where the BGD's had been standing. Officer Hay recognized Riley from prior contacts and knew him to be a member of the Bloods, a rival gang.

Although the facts were in dispute, Officer Hay testified that Riley began running south on 23rd when he saw the police car. Officer Hay pursued Riley in his patrol car, Officer Howard jumped out of the car and ordered Riley to the ground, and other officers arrived and placed Riley under arrest. While patting down Riley for weapons, Officer Ramm, one of the arresting officers, noticed a bulge in Riley's right rear pocket. Officer Ramm investigated and discovered a 5-shot revolver,

which contained three spent rounds and two live rounds of ammunition.

At the police precinct, Officer Hay advised Riley of his constitutional rights, and Riley indicated that he understood them. Riley then gave a statement to Officer Hay, which read:

> Tonight I was downtown with Slim and Jay Collins at a party. Some BGDs started to make trouble with us. . . . I was standing on the stairs and they came up and jumped me and knocked me down the stairs. They stomped on me and kicked me[.] We left in Slim's car and went up by Union where I had the gun stashed. I got the gun, those [BGD's] were trying to kill me, those [BGD's] tried to get me and vice versa. I wasn't trying to shoot at them, just in the air. And that's it.

Riley was charged with assault in the second degree in violation of RCW 9A.36.021(1)(c) and RCW 9.94A.125. Prior to trial, Riley moved under CrR 3.5 to suppress his statement and moved under CrR 3.6 to suppress the gun seized. Both motions were denied. No findings of fact and conclusions of law on the suppression rulings were entered.

During trial, the State presented testimony from the arresting officers. In addition, the State presented the testimony of Slim Simpson, the driver of the car in which Riley had been riding, and of Demecho Duggins and Kevin Pigge, two of the BGD's who had been shot at.

Riley testified in his own defense, stating that he no longer had any gang affiliations, that he left the party with Slim Simpson in Slim's maroon Monte Carlo, and that at 23rd Avenue and East Union he saw some BGD's. Riley testified that the BGD's signaled that they wanted to fight, that Simpson pulled over because Riley had seen a friend, and that the BGD's were advancing menacingly. Further, Riley testified that he was afraid for his life, that he got a gun from his friend, and that he fired into the air.

In closing argument, the prosecutors stated that, in order to believe Riley's story, the jury would have to disbelieve the testimony of the officers and the BGD's. Defense counsel did not object, did not make a motion to strike, and did not ask for a curative instruction.

Riley was convicted of assault in the second degree and was given a sentence of 40 months, a sentence 16 months beyond the standard range. The Superior Court based its exceptional sentence on the fact that Riley committed a willful and wanton act of retaliation against rival gang members who were not involved in the incident for which Riley was retaliating and that Riley committed the assault in total disregard for the safety of others.[1] Riley appeals.

■ We first consider whether the Superior Court committed reversible error in failing to enter findings of fact and conclusions of law concerning its denial of Riley's motions to suppress. Written findings of fact and conclusions of law are required for all rulings on motions made under CrR 3.5[2] and 3.6.[3] However, although "failure to submit written findings

---

[1]Specifically, the Superior Court found:

1. Defendant was a member of a gang engaging in criminal activity and in violence with rival gangs.

2. This assault was motivated by defendant's desire to retaliate against members of a particular rival gang as a result of a prior incident.

3. Defendant sought out members of the rival gang in an area where they were likely to be found, on a public thoroughfare, and at a time when passers-by, as well as rival gang members might be there.

4. The rival gang members shot at by defendant were not those involved in the prior incident for which defendant was retaliating. Nor had the prior incident involved the use of weapons against the defendant.

5. This assault was a wanton and willful act of retaliation directed in a random manner toward victims uninvolved except for their rival gang affiliation, and carried out in total disregard for the safety of others.

The court concluded that the "[d]efendant's exceptionally high danger to the public through random violence with a firearm, under the circumstances outlined in Findings of Fact 1-5, presents an aggravating factor which . . . is a sub-stantial and compelling reason for the sentence imposed above the standard range."

[2]CrR 3.5(c) provides:

"After the hearing, the court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefor."

[3]CrR 3.6 provides:

"At the conclusion of a hearing, upon a motion to suppress physical, oral or identification evidence the trial court shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) the court's findings as to the disputed facts; and (4) the court's reason for the admissibility or inadmissibility of the evidence sought to be suppressed."

and conclusions pursuant to CrR 3.5 and 3.6 is error, such error is harmless where the trial court's oral findings are sufficient to permit appellate review." *State v. Smith*, 67 Wn. App. 81, 87, 834 P.2d 26 (1992), *review granted*, 120 Wn.2d 1018 (1993); *State v. Clark*, 46 Wn. App. 856, 859, 732 P.2d 1029, *review denied*, 108 Wn.2d 1014 (1987).

The trial court's oral findings are sufficient to permit appellate review of the trial court's denial of Riley's motions to suppress. Regarding the CrR 3.5 motion, the court found that Riley was fully informed of and understood his *Miranda*[4] rights, that he voluntarily made the statement, that there was no evidence of coercion, and that he made the statement knowingly and intelligently. Regarding the CrR 3.6 motion, the court noted that no argument was made that the gun had been improperly seized, that the State had the burden of linking the gun seized with the alleged assault, and that deciding whether the State had met that burden was within the province of the jury. Because the court's oral decision sufficiently set forth its reasons for denial, failure to enter written findings and conclusions was harmless error.

■ We next determine whether prosecutorial misconduct deprived Riley of his right to a fair trial and requires reversal.[5] "Prosecutorial misconduct requires reversal when there is a substantial likelihood that the argument affected the jury's verdict." *State v. Barrow*, 60 Wn. App. 869, 876, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991); *see also State v. Mak*, 105 Wn.2d 692, 726, 718 P.2d 407, *cert. denied*, 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986). "The burden of proving such prejudice rests with the defense." *Barrow*, at 876; *see also State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986).

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

[5] The State concedes that the prosecutor committed error by stating during closing argument that, if the jury were to believe Michael Riley, it would have to find that the arresting officers and other witnesses were not telling the truth. The State's conclusion is consistent with *State v. Barrow*, 60 Wn. App. 869, 874-75, 809 P.2d 209, *review denied*, 118 Wn.2d 1007 (1991), where this court held that similar liar arguments amounted to misconduct.

Unless a defendant objected to the improper comments at trial, requested a curative instruction, or moved for a mistrial, reversal is not required unless the prosecutorial misconduct was so flagrant and ill intentioned that a curative instruction could not have obviated the resultant prejudice.

*Barrow*, at 876; *State v. Ziegler*, 114 Wn.2d 533, 540, 789 P.2d 79 (1990).

██ Because Riley did not object to the prosecutor's improper closing argument, request a curative instruction, or move for a mistrial, Riley must make a showing that the prosecutor's misconduct was so egregious that the resulting prejudice could not have been obviated by a curative instruction. Riley cannot meet this burden. *See Barrow*, at 876 (finding that a curative instruction would have cured the prejudice engendered from similar liar arguments). Thus, although the prosecutor's misconduct should not be condoned, reversal is not warranted.

Finally, we consider whether the Superior Court erred in imposing an exceptional sentence.

A reviewing court may reverse an exceptional sentence if it finds that the trial court's supporting reasons do not justify an exceptional sentence as a matter of law. RCW 9.94A.210-(4)(a); *see also State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987). Gang membership, by itself, may not be a factor which justifies an exceptional sentence.[6] However, Division Two of this court upheld an exceptional sentence imposed for a gang-related shooting which furthered the gang's reputation as a powerful and violent organization. *See State v. Smith*, 64 Wn. App. 620, 624-25, 825 P.2d 741 (1992). In addition, Division One of this court upheld an exceptional sentence imposed for a random shooting, a type of crime often associated with gang violence. *See State v. Smith*, 58 Wn. App. 621, 626-27, 794 P.2d 541 (1990), *rev'd on other*

---

[6]*Cf. State v. Smith*, 64 Wn. App. 620, 625, 825 P.2d 741 (1992) ("[W]e do not necessarily disagree with Smith's contention that persons should not receive a criminal penalty merely because they belong to an organization, regardless of what we may think of the organization[.]").

*grounds sub nom. State v. Barnes*, 117 Wn.2d 701, 712, 818 P.2d 1088 (1991). In affirming the exceptional sentence, this court stated that "unpredictable, irrational violence, committed without warning, [is] particularly insidious . . . [and is] especially destructive of society's sense of security."[7] *Smith*, 58 Wn. App. at 626.

■ Riley argues that the Superior Court infringed upon his constitutional rights to freedom of expression and association by considering Riley's gang membership as a factor which supported the exceptional sentence. However, although gang membership may be constitutionally protected, criminal gang-related activities are not. The Superior Court found that Riley went into rival gang territory at a time when rival gang members would be there, that he acted in retaliation for his earlier beating, that he retaliated against rival gang members who had not participated in the earlier assault, and that, unlike Riley's act of retaliation, the earlier beating had not involved the use of weapons. Finally, the court found that the assault was carried out on a public thoroughfare in a random manner with total disregard for the safety of others. This type of gang-related violence justifies the exceptional sentence imposed.

The judgment and sentence of the trial court are affirmed.

WEBSTER, C.J., and BAKER, J., concur.

---

[7] In *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991), the Supreme Court reversed and remanded for resentencing, finding that four of the six reasons supporting Smith's exceptional sentence were improper. *Barnes*, at 712 (future dangerousness not a proper factor supporting an exceptional sentence in nonsexual cases). However, the *Barnes* court agreed that the presence of unpredictable, irrational violence was a proper factor to be considered. *Barnes*, at 712 (referring to *Smith*, 58 Wn. App. at 624-27).