[No. 27021-4-I. Division One. April 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTWON JOHNSON, *Appellant.*

*Andrew P. Stanton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Denis O'Leary, Deputy,* for respondent.

SCHOLFIELD, J. — Appellant Antwon Johnson appeals his conviction on one count of assault in the first degree, RCW 9A.36.011(1)(a), and one count of assault in the second degree, RCW 9A.36.021, contending the trial court erred in failing to grant a mistrial when his mother created a disturbance in the courtroom, and erred in imposing an exceptional sentence. Johnson further alleges various trial errors in his supplemental brief. We affirm.

This case involved a shooting incident in which Johnson was alleged to have fired several shots at vehicles driven by members of the Crips gang. Johnson was charged with two counts of first degree assault. Both counts carried a deadly weapon allegation.

William Robbins was a witness to the incident. Robbins testified that on March 13, 1990, he drove to the John Muir Elementary School to pick up two of his children who attended the school. As he sat in his car waiting for the schoolbus, Robbins saw a man (whom he identified in court as Johnson) proceed up 33rd Avenue on foot, throw an "SOS" box underneath a mailbox, step out into the street, and fire four shots at a red car. Robbins stated that Johnson then casually walked back down 33rd Avenue.

School-crossing guard Roy Dunn also witnessed the incident. Dunn testified that he saw a man shoot at a green and white Chevrolet. After the incident, Dunn found four shell casings located in the crosswalk and gave them to police.

Marvin Jones testified that he was a member of the Crips gang. Jones testified that on March 13, 1990, he and his brother, Germaine Scott, and another Crips member, Taifa Griffith, were in the neighborhood where the shooting occurred. They traveled in different cars: Jones in a burgundy Cutlass, Griffith in a green and white car, and Scott in a Capri. Jones testified that the Black Gangster Disciples (BGD's) was the primary gang around the area of John Muir Elementary School, and that the two gangs did not get along.

Jones stated that he, Scott and Griffith were in the area to talk to some girls. At Horton Street, they saw some girls and stopped to talk, and Jones spotted two individuals he recognized as BGD's. The two groups then flashed their respective gang signals. One of the BGD's then "broke and ran off ". Jones testified that his group then got in their cars and drove up Horton Street, because he believed the BGD's were going to get a gun. Jones stated that Johnson then appeared out of the bushes and shot at his and Griffith's cars.

In the midst of the prosecutor's closing argument, an audience member created a disturbance.[1] Johnson referred to her in the jury's presence as "mom" approximately three times. In part, this person stated "It ain't fair! This is not fair. They are just a bunch of gang-bangers!". She further stated, "All I want you jurors to know is that Martin, their [sic] Cripps [sic]. Their [sic] crabs. Their [sic] gang bangers. My son ain't no gang banger, honey. . . ." The woman was removed from the courtroom. Defense counsel moved for a mistrial. The court denied the motion, and verbally instructed the jury "not to consider anything that was stated by the person who was sitting in the bench in the rear of the courtroom, as it has absolutely nothing to do with the charges made against the defendant here or of any verdict you may arrive at."

The jury found Johnson guilty of first degree assault as alleged in count 1, and not guilty of first degree assault as alleged in count 2. As for the latter count, the jury returned a verdict of guilty on the lesser included offense of second degree assault. The jury further found that Johnson was armed with a deadly weapon during both offenses.

Johnson was sentenced on August 13, 1990. The State requested an exceptional sentence, claiming that Johnson's

---

[1]The text of this disturbance was not transcribed in the report of proceedings. The text of the audience member's statements is located in the correspondence file as a "Supplemental Verbatim Report of Proceedings".

offense was gang motivated and impacted the community's zone of protection or safety.

The standard range for count 1 (first degree assault) was 85 to 113 months, with a maximum term of life imprisonment. Former RCW 9.94A.310-.320. For count 2 (second degree assault), the standard range was 25 to 29 months.[2] RCW 9.94A.310-.320. The court imposed an exceptional sentence of 170 months on count 1 and 50 months on count 2, the terms to be served concurrently, and entered the following findings and conclusions:

### FINDINGS OF FACT

1. Antwon Johnson is a known member of the Black Gangster Disciples (BGD's) street gang. His membership with this gang predated the assaults.

2. The named victims were members of the CRIPS street gang. The CRIPS and BGD's are rival organizations.

3. The purposes of these gangs are narcotics trafficking and the commission of violent offenses.

4. The BGD's are structured with a hierarchy among its members. A member elevates his position in this hierarchy and enhances his status by committing violent acts against rival gang members.

5. Antwon Johnson committed these assaults against rival gang members in an attempt to assert BGD dominance over the CRIPS and to advance his own position within the BGD organization.

6. The impact of the defendant's assaults went far beyond the intended victims.

7. The defendant opened fire on gang members immediately next to a public elementary school that was in session.

8. As a result of the defendant's actions, children have become frightened to go to school and parents fearful that their children are not safe while at the school.

9. The defendant invaded the community's zone of safety.

### CONCLUSIONS OF LAW

. . . .

2. These crimes were gang-motivated. The court finds this to be an aggravating factor which justifies going beyond the presumptive standard range.

---

[2]Johnson had an offender score of 3 for both counts. The standard range for count 2 includes an additional 12 months, as the jury concluded Johnson was armed with a deadly weapon. See RCW 9.94A.310(3)(c).

3. The invasion of the community's zone of safety is an aggravating factor which justifies going beyond the presumptive standard range.

. . . .

This appeal followed.

Johnson claims the sentencing court erred in imposing an exceptional sentence because of gang motivation, as the finding was not supported by the record and there was no legally permissible rationale for giving an exceptional sentence on such basis.

■ Review of an exceptional sentence is governed by RCW 9.94A.210(4). An appellate court analyzes the appropriateness of an exceptional sentence by answering the following three questions under the indicated standard of review: (1) Are the reasons given supported by the evidence in the record? As to this, the standard of review is " 'clearly erroneous' ". (2) Do the reasons given justify a departure from the standard range? The standard of review on this is as a " 'matter of law' ". (3) Is the sentence clearly too excessive or too lenient? The standard of review is " 'abuse of discretion' ". *State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991); *State v. Holt*, 63 Wn. App. 226, 228-29, 817 P.2d 425 (1991).

■ RCW 9.94A.390(2) lists several aggravating factors which the trial court may consider in imposing an exceptional sentence. While "gang motivation" is not among these factors, the factors are illustrative only and are not intended to be exclusive reasons for exceptional sentences. RCW 9.94A.390; *State v. Estrella*, 115 Wn.2d 350, 357, 798 P.2d 289 (1990).

The State called two witnesses at the sentencing hearing, Seattle Police Officer Dale Williams and Detective Paul Pomerville. Williams testified that on July 20, 1989, he saw Johnson running down the road waving his hands near Rainier Avenue South and South Waldon. Williams stopped to speak with Johnson. Williams testified that Johnson said he was being chased by a group of Crips in a vehicle. Williams subsequently stopped the vehicle and arrested two of

its occupants. Johnson approached, and began yelling at the persons in Williams' patrol car, and flashed what Williams interpreted as a gang sign at them. Williams testified that Johnson seemed rather proud of his gang affiliation, because "he kept on looking at the two handcuffed Crips that I had in the back of my car and he told them that if they came back to the area, basically they would get the same kind of treatment." Johnson later told Williams he was a BGD gang member.

Detective Pomerville, a witness with specialized training in gang activities, testified about gangs generally. Pomerville testified that acts of violence definitely enhanced a gang member's status, and that members could obtain leadership status through such acts. He stated that criminality was an integral part of gang activity, and that gangs were groups primarily involved in criminal activity. Pomerville testified that the BGD gang was very active against both the Crips and Bloods, and particularly against the Crips. He testified that the gangs compete to control an area in order to control the narcotics traffic of that area.

Pomerville testified that Horton Street was BGD turf. Pomerville stated gang members often take on street names or monikers, and that such names were an important part of one's relationship with a gang. He was not aware of any such name belonging to Johnson. As of July 14, 1989, police documents listed Johnson as an "associate" of the BGD's. Pomerville stated that associates are "those that have been seen to be associating with other gang members, but there has not been an admission on file and sufficient associations and gang criminal activity to call them a member." Pomerville acknowledged that Johnson had not been involved in other shooting incidents, that he lived in the area of John Muir Elementary School, and that it would not be uncommon for him to be seen with other neighborhood youths who also happened to be gang members.

In addition to the above testimony, the court considered letters from parents and teachers expressing fear of walking in the neighborhood surrounding the school due to the shooting.

Although Pomerville's testimony indicates that gang members generally commit violent assaults to advance their positions and status within a gang, there is no evidence that Johnson specifically committed the assault for this purpose.

Johnson claims there is no evidence in the record to support the court's finding that he committed the assault to exert BGD dominance over the Crips. We disagree. The prior incident about which Williams testified demonstrates that hostility existed between Johnson and certain Crips members. Johnson's conduct toward the Crips during the earlier incident could be construed as threatening and as a warning that they not return to the area. This evidence, combined with the shooting, supports the inference that Johnson was attempting to assert BGD dominance over the Crips.

Johnson asserts that the court violated the real facts doctrine[3] in relying on evidence that he committed the current offenses to elevate his position in the gang hierarchy and assert dominance over the Crips. He urges this court not to follow a recent Division Two decision which based an exceptional sentence on findings that a gang member's crimes were committed to further the illegal activities of the gang. *See State v. Smith*, 64 Wn. App. 620, 625-26, 825 P.2d 741 (1992).

In *Smith*, the defendant received an exceptional sentence following his conviction for first degree murder. The charges apparently arose from an incident where Smith and other gang members had opened fire with numerous weapons at another vehicle containing three occupants. *Smith*, at 623. The sentencing court entered several findings in support of

---

[3]The "real facts" concept of RCW 9.94A.370(2) excludes consideration of either uncharged crimes or crimes that were charged but later dismissed. *See State v. Barnes*, 117 Wn.2d 701, 707, 818 P.2d 1088 (1991).

the sentence which dealt with gang membership. *Smith*, at 622-23. In part, these findings were that

### VIII.

The long-term purpose of the shooting was to strengthen the gang; *i.e.*, to protect the HTCG's "turf" and drug income by intimidating rivals and projecting an image of strength and violence.

### IX.

The somewhat random acts of violence by defendants on March 24, 1989, was a form of terrorism, designed to intimidate foes of the HTCG in furtherance of the gang's criminal purposes centered on illicit drugs sales.

*Smith*, at 623. Based in part on these findings, the sentencing court in *Smith* concluded:

### I.

The terrorist-type shooting by defendants was in furtherance of a criminal enterprise, the Hilltop Crips Gang, to project its power and drug empire through violence. This is a substantial and compelling reason to sentence outside the standard range.

*Smith*, at 623.[4] On appeal, Smith claimed the sentencing court improperly considered his gang membership in imposing the exceptional sentence. Smith claimed in part that this reliance was improper because gang membership was a " 'constitutionally impermissible factor' ". *Smith*, at 624.

The *Smith* court disagreed:

If Smith's sentence had been enhanced simply because he belonged to a gang, Smith's argument might have merit. The trial court's conclusion was not, however, that broad. It concluded that Smith's conduct in shooting "slobs" in order to further the reputation of the criminal enterprise, the gang, as a powerful and violent organization, was a basis for the exceptional sentence. This reasoning, which clearly finds support in the trial court's unchallenged findings of fact, was a proper basis for enhancing the standard range sentence.

. . . .
. . . While we do not necessarily disagree with Smith's contention that persons should not receive a criminal penalty merely because they belong to an organization, regardless of what we may think of the organization, we do not agree that the sentencing court may not consider a person's motivation

---

[4]The sentencing court in *Smith* also based its exceptional sentence on future dangerousness, which the *Smith* court invalidated. *See Smith*, at 623-24.

for criminal conduct. Here, Smith was acting to further the criminal enterprise. It is that motivation, to further the illegal activities of the gang, that underlies the increased sentence, not the mere fact of gang membership. . . .

. . . In cases such as this, where specific criminal activity is motivated by the desire of the criminal to further the illegal objectives of the gang, by projecting its image as a terrorist organization, an appropriate basis for an exceptional sentence is established.

*Smith*, at 624-26.

Johnson claims the court's reasoning in *Smith*, like the sentencing court's reasoning here, is flawed in light of the "real facts" doctrine. Johnson contends that, in both *Smith* and this case, the facts relied on by the sentencing court to enhance the sentence establish a violation of RCW 9A.82.060(1)(a) and (b), a statute entitled "[l]eading organized crime". In part, the statute states:

(1) A person commits the offense of leading organized crime by:
(a) Intentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity; or
(b) Intentionally inciting or inducing others to engage in violence or intimidation with the intent to further or promote the accomplishment of a pattern of criminal profiteering activity.

The facts of *Smith* do not establish a violation of RCW 9A.82.060(1). Although Smith was a distributor of cocaine to lower level drug dealers, *see Smith*, at 622, the facts do not establish that he intentionally organized, managed, directed, supervised or financed these dealers as required for a violation of RCW 9A.82.060(1)(a). Nor do the facts of *Smith* establish a violation of RCW 9A.82.060(1)(b). While Smith may have engaged in violence or intimidation himself, the facts do not show that he incited or induced others to do so. This reasoning is equally applicable here and thus the facts do not show that Johnson violated RCW 9A.82.060(1)(a) or (b) through his actions.

Johnson contends that even if this court accepts that his motivation was to increase his status within the gang and assert dominance over the Crips, the rationale of *Smith* is not applicable because his motivation was not to further

the criminal activities of the gang. It was this latter factor that the court in *State v. Smith, supra,* relied upon to support an exceptional sentence.

Although not specifically stated, the clear implication of the sentencing court's findings and conclusions in this case is that Johnson's acts were in furtherance of a criminal enterprise.[5] In any event, we do not believe that a specific finding that Johnson acted in furtherance of a criminal enterprise was necessary because a conclusion that Johnson's offenses were "gang motivated" is an appropriate aggravating factor. Unlike an ordinary assault, Johnson's shooting was likely to provoke retaliation and thus an escalation of violence. This is implicit in the trial court's finding that the Crips and BGD's are rival organizations whose purpose is in part to commit violent offenses. The court's finding is supported by Pomerville's testimony that gang violence is directed against rival gang members, among others, and that a gang member's act of disrespect toward a rival gang member is usually followed by violence. We therefore believe that in this case, gang motivation for the assaults is an appropriate aggravating factor.[6]

■ Johnson next claims the sentencing court erred in concluding that an exceptional sentence was justified based on community impact. Impact on others is a proper aggra-

---

[5]The sentencing court heard testimony that gangs compete to control an area in order to control the narcotics traffic of that area. The court found that the purpose of the BGD's and other gangs is narcotics trafficking and the commission of violent offenses. A necessary implication of this finding is that the gangs are criminal enterprises. The sentencing court found that Johnson's assaults were done in an effort to assert BGD dominance over the Crips. This implies that Johnson attempted to further the interests of the BGD's at the expense of the Crips in the area where the shooting occurred, which was identified as BGD turf. The court's conclusion that the crimes were gang motivated rests on evidence that Johnson acted in furtherance of the BGD enterprise.

[6]Although the evidence does not indicate that Johnson committed the current offenses to advance his position within the BGD's, we believe the valid findings support a conclusion of gang motivation.

vating factor where "the defendant's actions have an impact on others of such a distinctive nature that it is not normally associated with the commission of the offense in question *and* where the impact is foreseeable to the defendant." *State v. Crutchfield*, 53 Wn. App. 916, 928, 771 P.2d 746 (1989).

Johnson does not dispute that the impact of his crime was foreseeable, but instead, claims the impact of his offenses on others was not unusual or distinctive. We disagree. The shooting occurred next to a public elementary school that was in session. We agree with the sentencing court that the crimes had an impact far beyond the intended victims. It is clear from the evidence that Johnson's actions exposed a concentration of children to harm. The sentencing court found that children have become frightened to go to the school and that parents are fearful that their children are not safe while at the school. We view this impact as being distinctive and not normally associated with first or second degree assault.

This result is not contrary to *State v. Cuevas-Diaz*, 61 Wn. App. 902, 812 P.2d 883 (1991). In that case, the defendant was convicted on charges of first degree burglary and indecent liberties. The sentencing court imposed an exceptional sentence, relying in part on a finding that the emotional impact on the victim was particularly severe, and that "[t]he defendant's crime impacted the whole community, especially women who live alone or with small children or whose husbands are gone for extended periods of time." *Cuevas-Diaz*, at 904 (quoting trial court finding of fact 9). This court declined to view the impact of the defendant's acts on the victim and community as an aggravating factor:

> The trial court also relied on the impact of the offense on the victim and the community at large as a reason for the exceptional sentence. In our opinion, neither impact provides a basis for an exceptional sentence. We recognize that the crime victim as well as the community suffer[s] from criminal acts; however, such impact is foreseeable and it exists in any case.

*Cuevas-Diaz*, at 905.

There is no indication from the *Cuevas-Diaz* opinion as to what evidence, if any, the sentencing court had before it demonstrating actual community impact or fear. The sentencing court in this case considered several letters expressing community fear as a result of the shooting. More importantly, because this shooting occurred near a concentration of schoolchildren and created fear in the minds of both the children and their parents, the evidence of distinctive community impact is simply more compelling here than in *Cuevas-Diaz*.

■ Johnson next claims the trial court erred in refusing to grant a mistrial when his mother created a disturbance in the courtroom, interrupting the prosecutor's closing argument. This court applies the abuse of discretion standard in reviewing a trial court's denial of a motion for mistrial. *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989). An appellate court finds abuse only " 'when no reasonable judge would have reached the same conclusion.' " *Hopson*, at 284 (quoting *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 667, 771 P.2d 711, 780 P.2d 260 (1989)).

> The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial.

*Hopson*, at 284 (quoting *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986)). In determining the effect of an irregularity, the court examines (1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it. *Hopson*, at 284.

The irregularity in this case was an audience member's outburst. This person hurled insults at state witnesses, calling them "gang bangers", and stated that "[m]y son ain't no gang banger, . . .". Johnson referred to the person as "mom".

In *State v. Escalona*, 49 Wn. App. 251, 253, 742 P.2d 190 (1987), the victim in an assault case volunteered during cross

examination that the defendant, Alberto Escalona, had a criminal record and had stabbed someone. This court viewed the unsolicited statement as extremely serious and inherently prejudicial. *Escalona*, at 255-56. Given the weakness of the State's case against Escalona and the logical relevance of the statement, the court believed an instruction to the jury could not cure the prejudicial effect of the statement, and ruled that the trial court abused its discretion in denying Escalona's motion for a mistrial. *Escalona*, at 256.

The comments by the audience member in this case, though likely startling, were not inherently prejudicial. There is no basis for concluding that the jury believed Johnson was more likely to be guilty of assault simply because it observed an agitated woman, who was purportedly Johnson's mother, insult state witnesses. The court properly instructed the jury to disregard the outburst, and we find no abuse of discretion.

By way of supplemental brief, Johnson claims the trial court erred in denying him the right to confront witnesses against him, allowing the prosecution to solicit perjured testimony, allowing the prosecutor to inject his personal beliefs as to Johnson's guilt, and in allowing the prosecutor to commit other errors. He also contends he was denied effective assistance of counsel. We have carefully considered these claims and find them to be without merit.

Judgment affirmed.

BAKER and AGID, JJ., concur.

Review granted at 122 Wn.2d 1009 (1993).