[No. 32648.   Department Two.   May 20, 1954.]

LILLIAN MURPHY, *Appellant,* v. CHARLES C. MURPHY, *Respondent.*[1]

[1]Reported in 270 P. (2) 808.

*Mary E. Burrus* and *Barbara E. Reardon,* for appellant.

*Army Seijas,* for respondent.

DONWORTH, J.—Plaintiff wife appeals from a judgment of the superior court awarding her a divorce, dividing the personal property between the parties as specified therein, ordering that a certain parcel of real property (on which there is an unfinished house) be listed for sale, and directing that the net proceeds of the sale be applied first to the payment of the debts incurred by the parties and that the balance be divided equally between them.

On this appeal, plaintiff wife claims that the trial court erred in seventeen particulars (assigned as errors) which entitle her to a more favorable division of the property or to a new trial.

The parties had each been previously married and divorced. Appellant had two children by a prior marriage. She is a meat cutter by occupation, capable of earning the union scale of pay; and respondent, at the time they first met in February, 1946, was a member of the Seattle Police Department. They were married January 17, 1948, and separated four years later. Subsequent to their separation, respondent retired from the police department on a pension of one hundred twenty-five dollars per month.

We see no need of relating the various disputes and difficulties which the parties encountered during the brief period of their marriage. Each party sought to obtain a divorce

from the other. The trial court denied respondent a divorce and granted appellant a divorce based on this finding of fact:

"V

"That the defendant, has been guilty of excessive drinking and associating with another woman during his married life to the plaintiff herein, and the plaintiff should be granted a decree of divorce, on the grounds of mental cruelty. The defendant is denied a divorce, in that the defendant has not sustained the burden of proof on his cross-complaint."

■ Appellant argues that this finding (challenged in her third assignment of error) should have stated the ground of physical cruelty instead of mental cruelty as a basis for the divorce granted to her. However, she does not (and could not) claim that the trial court erred in entering the divorce decree dissolving the marriage of the parties. Where the parties have been divorced we will not review the ground on which the decree was granted, at the request of the prevailing party, when to do so would not change the result. *Schilling v. Schilling,* 42 Wn. (2d) 105, 253 P. (2d) 952; *Saffer v. Saffer,* 42 Wn. (2d) 298, 254 P. (2d) 746.

In discussing certain of appellant's assignments of error, we will set forth such facts as are necessary to an understanding of appellant's position in respect thereto.

■ Appellant's first assignment of error attacks a portion of finding No. IV which states that prior to marriage each party had a quantity of separate property which later was commingled with property acquired by them after marriage. She argues that there was no evidence that respondent had a quantity of property before the marriage. Since this fact was admitted by the pleadings, there is no necessity for any evidence to support this finding. (RCW 4.36.160.)

■ Complaint is made of another portion of finding No. IV which listed the unpaid liabilities incurred by the parties during the marriage as totaling $4,767 (plus interest and taxes and assessments for 1952 and 1953). No reason is stated in support of this assignment; so we need not consider it further.

There are two matters concerning which appellant claims that the trial court committed error which require discus-

sion: (a) respondent's use of a picture album while testifying, and (b) the disposition of the home property.

The first matter is referred to in assignments No. 8 through No. 12 wherein appellant asserts that the trial court erred in considering pictures of the real property in a photograph album which was not offered or admitted in evidence, and in refusing to view the property after having seen the pictures.

The album was used by respondent while testifying regarding work done by both parties in the construction of their home on Beacon Hill. From respondent's testimony it is inferable that he showed the trial judge some pictures taken while he was performing this work. In appellant's brief she describes the situation as follows:

"What the photographs actually represented is not known to appellant, since at no time was the album marked for identification, offered to counsel for plaintiff for examination, nor was the album properly authenticated by respondent. Respondent did not offer the album into evidence and the trial court did not regard the album as having been received as legal evidence. The respondent simply took the album of photographs handed him by his counsel and immediately commenced showing the pictures to the trial judge —with remarks, such as this:

" 'That is me doing the work. . . . Here is the beginning of the construction, putting on the side sewer, and the bulldozer on the excavation. . . . That is the general stage of the construction at the present time.'

" . . .

"As is obvious upon reading the colloquy between respondent and his counsel, respondent's purpose in employing the album of pictures was two-fold: Firstly, to support the position that respondent's contribution constituted the major part of the work done toward the construction of the home and secondly to support respondent's representations as to the present condition of the home property."

■ There are two reasons why this incident does not warrant granting appellant a new trial. The first is that we cannot presume that the court considered the pictures as evidence in making the division of the property between the parties.

As this court said in *Mapes v. Mapes,* 24 Wn. (2d) 743, 167 P. (2d) 405, a case in which a witness was allowed to read from a memorandum prepared shortly before the trial listing loans the witness (plaintiff) claimed to have received from his father:

"In *Bergman v. Shoudy,* 9 Wash. 331, 37 Pac. 453, this court held that the use of a memorandum similar in character to the one used in the trial of this case, constituted reversible error. However, in that case, the cause was tried to a jury, while here the trial was to the court. *We cannot presume that the trial court, in the instant case, considered the inadmissible testimony when arriving at its decision.* Hence, the error does not compel a reversal of this case." (Italics ours.)

In *McJannet v. Strehlow Supply Co.,* 25 Wn. (2d) 468, 171 P. (2d) 173, inadmissible evidence was received, over objection, in a case tried to the court. We said:

"Conceding the correctness of appellant's position, the admission of the improper testimony did not constitute reversible error. This action was tried to the court, and, as the judgment is supported by other sufficient, competent evidence, the admission of the evidence of which appellant complains was harmless."

Here both parties offered sufficient competent evidence to support the judgment of the trial court on the matter of the disposition of the home property. Consequently, while we do not approve such procedure, the court's viewing of the pictures was harmless error. *Adams v. Seattle,* 31 Wn. (2d) 147, 195 P. (2d) 634, quotes the same rule with approval.

Furthermore, the trial court indicated that it considered the question of the marketability of the real property immaterial. Therefore, it is apparent that the court gave the pictures no weight in arriving at a decision on the matter of marketability of the property. Consequently, even more so than in *Mapes v. Mapes, supra,* this court should not, and will not, presume that the trial court made any improper use of the pictures.

The second reason is that, even assuming that the court committed error in viewing the pictures, appellant's counsel

made no objection until respondent had completed his testimony and then moved for a mistrial. While complaint was made that her counsel had not had an opportunity to examine the pictures, no request to see them ever was made by appellant. The record shows that her position was stated to the court as follows:

"Miss Burrus: I would like counsel to clarify the matter of the pictures and his testimony, as to whether those pictures are being introduced in evidence; and if so, they should be identified as to when they were taken.

"The Court: I say the objection came too late. Do you have any further questions?

"Miss Burrus: Yes, sir, I do. I wish to call the Court's attention to the fact that I have not had any opportunity, nor been offered any opportunity, to examine them.

"The Court: You didn't request it. There is nothing before the Court to rule on. Go ahead and ask any questions you may have.

"Miss Burrus: At this time then, Your Honor, I ask to move for a mistrial in the consideration of evidence which is not offered in evidence; I am not given an opportunity to see it.

"The Court: Motion is denied. The pictures are here. You may offer them.

"Miss Burrus: I have not seen them.

"The Court: You didn't ask. Well, I still have nothing to rule on. There is no offer of any evidence; and if you have any questions, proceed and ask them."

Later, when respondent suggested to the court that the home property be placed in the hands of a receiver for the purpose of sale, the trial court again suggested that appellant's counsel might look at the album. The court said:

"The Court: Well, I will not rule on the question now. I have the question as to whether I will. I may suggest to counsel for plaintiff that you objected to the Court's referring to the pictures which show various stages in the construction of this place. There was no objection, and that can't be cured. The Court has seen them. The question wasn't raised until after that testimony was in. My position on that is, and counsel has the album—it is available to you —if you request that, you may see it and you have the opportunity to offer any of them or demand that they be admitted. I have had that much information, and I will

consider it until morning as to whether I feel that a view of the premises will add anything."

Counsel at no time requested an opportunity to examine the pictures and ignored the court's suggestion to do so. We, therefore, hold that appellant cannot be heard to complain of the court's denial of her motion for mistrial. No timely objection was made to the court's seeing the pictures. If any error was committed regarding the use of the pictures, it was waived by appellant.

As to the trial court's refusal to view the premises as requested by appellant, the court stated that a view would not assist the court in deciding whether or not the property (with the house partially constructed) was marketable. Appellant offered no expert testimony on this point. The only testimony on this issue was appellant's own opinion that she doubted very much if the home property could be sold in its present condition. It was within the court's discretion to view or decline to view the property. The court's reasons for not doing so cannot be held to indicate an abuse of discretion. There was no error in its ruling upon appellant's request to view the premises.

The facts necessary for an understanding of the second matter (the disposition of the home property) may be summarized as follows:

In July, 1946, the lot on Beacon Hill was acquired for one thousand dollars, title being taken in appellant's name. There is a conflict in the testimony as to whether appellant paid the entire consideration. After the marriage she conveyed the lot to the community.

Beginning in April, 1948, both parties performed labor on the building of the house and improvement of the lot. When the basement portion was completed, the parties moved in it and lived there until they separated. The materials were paid for in a large part by borrowing money. The total amount unpaid at the time of the trial was $4,767 (plus interest and taxes and assessments for 1952 and 1953). The items making up this total are set forth in the findings of fact.

At the time of the trial the exterior of the house was completed, but respondent estimated that it would cost six thousand dollars to finish it. If completed, he thought it would sell for twenty-two thousand dollars. In its present state he valued it at twelve thousand dollars. He testified that they had paid $8,083.89 for materials which had been incorporated into the house, not including the one thousand dollars paid for the lot.

Appellant testified that they had put about seven thousand dollars in the house, but expressed the opinion that it was unmarketable in its present condition. She thought it would cost five thousand dollars to complete it according to their original plans.

Appellant assigns as error that portion of the court's decree ordering the parties to list the home property for sale, and directing that the proceeds be applied to the payment of the listed debts and the net balance equally divided between the parties. She contends that this is an abuse of discretion because the property is not marketable in its present condition.

In her brief she states her position thus:

"Both parties stated that the home is presently unfinished, that the basement is the only livable portion of the home, and that the exterior is now covered by tar paper only. It would appear evident to all reasonable persons that the home is not marketable in this state. Should not appellant be allowed to remain in the family home and finish it, with her own funds, rather than force a sale, assuming a sale could be effected, at a time when it is more than doubtful that the parties will realize an amount sufficient to pay the indebtedness much less recover the amount already expended? Was not the trial court under a duty to view the premises before ordering a sale which will, in effect, deprive the parties of the benefit of moneys invested? Would not an award of the unfinished home property to appellant and a division of the indebtedness according to the proper responsibilities of the parties have been the properly just and equitable division of the properties?"

It seems to us that, until the property is listed for sale and a bona fide attempt is made to sell it, any claim that

it is unmarketable is premature. If it subsequently develops that no sale can be made for a reasonable price, the trial court may issue such order as it deems necessary to enforce its decree and to protect the parties as to any rights given them thereby. *McLaughlin v. McLaughlin,* 43 Wn. (2d) 111, 260 P. (2d) 875. Appellant does not contend that the decree fails to make a final disposition of the home property and we, therefore, do not consider that question.

From our review of the evidence in this case we are unable to say that the trial court abused its discretion in ordering the listing of the home property for sale in the manner provided in the decree in this case.

In *Mapes v. Mapes, supra,* the applicable rule is stated as follows:

"The questions relative to the disposition of property in a divorce action, rest largely in the discretion of the trial court, and its judgment will not be disturbed except in those cases where we can say that the court abused its discretion and made an inequitable division of the property."

We very recently applied this rule in *Toivonen v. Toivonen, ante* p. 473, 268 P. (2d) 456, and we think that it is applicable to the present case.

Appellant's other assignments of error (not referred to specifically herein) have been considered, but none of them are of sufficient merit to justify extending this opinion further.

The decree of the trial court is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.