[No. 27017-6-I.    Division One.    December 27, 1993.]

THE STATE OF WASHINGTON, *Respondent*, v. JAI-MAR ELI
SCOTT, *Appellant*.

*Irene Tanabe* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jonathan Love, Deputy,* for respondent.

KENNEDY, J. — Appellant Jai-Mar Eli Scott appeals his exceptional sentence for first degree murder, contending that (1) the court's findings of fact and conclusions of law in support of the sentence are erroneous, (2) the court's findings are legally insufficient to support an exceptional sentence, and (3) the sentence is clearly excessive. We affirm.

## FACTS

1. Procedural Facts.

Scott was charged by second amended information with murder in the first degree, in violation of RCW 9A.32.030-(1)(a) and (c). Scott was tried by a jury on August 16-28, 1990. The jury found him guilty of premeditated murder pursuant to RCW 9A.32.030(1)(a) and felony murder pur-

suant to RCW 9A.32.030(1)(c). The jury returned a special interrogatory finding that the murder was committed in the course of, in furtherance of, or in immediate flight from robbery in the first degree and attempted rape in the first degree.

Scott's offender score was 0. His standard sentencing range was 240 to 320 months. The court imposed an exceptional sentence of 900 months.

The court entered written findings of fact and conclusions of law setting forth the reasons for its departure from the standard sentencing range, specifically (1) abuse of trust, (2) the victim's particular vulnerability, (3) deliberate cruelty, and (4) multiple injuries inflicted in the commission of the crime.

Scott filed an appeal of the judgment and sentence on October 4, 1990, cause 27017-6, and an appeal of the court's order of restitution on July 8, 1991, cause 28921-7. The two appeals were consolidated under cause 27017-6 on September 6, 1991. Scott presents no arguments concerning his appeal of the restitution order.[1]

2. Substantive Facts.

On September 27, 1989, Agnes Jackson, age 78, was murdered in her home located at 8312 Wolcott Avenue South in Seattle. Ms. Jackson, who suffered from Alzheimer's disease, lived alone.

Police investigation revealed that the murderer did not use force to gain entry into the house. There were signs of violence, including bloodstains and displaced items in Ms. Jackson's living room and in both bedrooms of the home.

Ms. Jackson's body was found by neighbors in the back bedroom. Her face was badly beaten and a telephone cord was bound tightly around her neck. The victim was naked from the waist down and her blouse and sweater were pulled

---

[1]Accordingly, we deny the restitution appeal without discussion. *See Murphy v. Murphy*, 44 Wn.2d 737, 270 P.2d 808 (1954) (holding that, when a party fails to argue an issue on appeal, the issue is waived).

up to the base of her breasts. Stray hairs and two burnt matches were collected from Ms. Jackson's abdomen.

Detective Lima theorized that the murderer used matches as a source of light during the attack. Numerous matchbooks and burnt matches were found throughout the residence. The contents of Ms. Jackson's wallet were strewn about on the living room couch. Her checkbook, which was found on her bed, had been opened.

Latent fingerprints were lifted from different locations within the home. One bloody fingerprint was located in the back bedroom/storage area where the victim was located. This print was found on a wall approximately 5½ feet from the floor. Next to this print was a bloody afghan, which had been placed over the window. The afghan normally was kept on the living room couch.

An autopsy by the King County Medical Examiner's Office attributed Ms. Jackson's death to ligature and manual strangulation. Ms. Jackson suffered six fractures to her neck, including a fracture through the neckbone to the back of the cervical spinal column. The autopsy also revealed the following head injuries: three fractures to the right eye and cheekbone, a subdural hemorrhage, a fracture to the base of her skull, and two gaping lacerations to the top of her head. An internal examination disclosed eight rib fractures. The autopsy also revealed a faint contusion on the mons pubis. Dr. Fitterer testified that all of the injuries looked as though they had occurred prior to the victim's death.

The police concluded that the victim's own cane and a broken and bloody glass candy jar lid were used as weapons in the attack.

Scott had lived next door to Ms. Jackson for 2 years. His mother, Elizabeth White, took care of Ms. Jackson for $100 a week. Because of this arrangement, Scott often did chores for Ms. Jackson and had access to the inside of her home.

On September 28, 1989, the police matched one of the latent fingerprints lifted from the victim's home to Scott's

fingerprint. Police executed a search warrant of Scott's home and seized two bloody socks, a T-shirt with bloodstains, and tennis shoes. Scott's fingerprints were also matched to prints found in various parts of the victim's home.

Pubic hairs which were removed from the victim's body and clothing contained the same microscopic characteristics as Scott's hairs. Blood comparison tests confirmed that the blood on Scott's socks and shirt was consistent with the victim's blood and not Scott's. Police also found numerous burnt matches throughout Scott's bedroom and the same brand of matchbook that was found in the victim's home. Finally, a bloody shoe print photographed at the scene was consistent with the size, tread pattern, and wear pattern of tennis shoes belonging to Scott.

## DISCUSSION

### I

### JUSTIFICATION FOR THE EXCEPTIONAL SENTENCE

Scott contends that the record does not support an exceptional sentence. We disagree.

RCW 9.94A.120, "Sentences", provides that:

> When a person is convicted of a felony, the court shall impose punishment as provided in this section.
>
> . . . .
>
> (2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.[2]

---

[2]RCW 9.94A.390 provides:

"The following are illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence. The following are illustrative only and are not intended to be exclusive reasons for exceptional sentences.

". . . .

"(2) Aggravating Circumstances

"(a) The defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim.

"(b) The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

"(c) The current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:

■ Appellate review of an exceptional sentence involves a 3-step process:

(1) are the trial court's reasons supported by the record, (2) do the stated reasons justify an exceptional sentence as a matter of law, and (3) did the trial court abuse its discretion by imposing a sentence that is "clearly excessive" or "clearly too lenient"?

*State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); *see also State v. Allert*, 117 Wn.2d 156, 163, 815 P.2d 752 (1991); *State v. Dunaway*, 109 Wn.2d 207, 218, 743 P.2d 1237, 749 P.2d 160 (1987).

■ The trial court's findings regarding the presence of aggravating factors, being a factual determination, must be upheld unless clearly erroneous. *Grewe*, at 218 (citing *State v. Nordby*, 106 Wn.2d 514, 517-18, 723 P.2d 1117 (1986)). *See also State v. Spisak*, 66 Wn. App. 813, 820, 834 P.2d 57 (1992). "We will reverse the trial court's findings only if no substantial evidence supports its conclusion." *Grewe*, at 218 (citing *Burba v. Vancouver*, 113 Wn.2d 800, 807, 783 P.2d 1056 (1989)).

■■ In contrast, the review of the legal adequacy of the aggravating factors to justify a departure from the standard range is a question of law. *Dunaway*, 109 Wn.2d at 218; *State v. Post*, 118 Wn.2d 596, 614, 826 P.2d 172, 837 P.2d 599 (1992); *Spisak*, 66 Wn. App. at 820-21. An aggravating factor is legally adequate to justify a sentence outside of the stan-

---

"(i) The current offense involved multiple victims or multiple incidents per victim;

"(ii) The current offense involved attempted or actual monetary loss substantially greater than typical for the offense;

"(iii) The current offense involved a high degree of sophistication or planning or occurred over a lengthy period of time;

"(iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.

" . . . .

"(e) The current offense included a finding of sexual motivation pursuant to RCW 9.94A.127;

" . . . .

"(g) The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly too lenient in light of the purpose of this chapter, as expressed in RCW 9.94A.010."

dard range as long as the aggravating factor was not necessarily considered by the Legislature in establishing the standard range, and as long as the asserted aggravating factor is "sufficiently substantial and compelling to distinguish the crime in question from others in the same category." (Citations omitted.) *Grewe*, at 216. *See also Nordby*, 106 Wn.2d at 518; *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987).

## Deliberate Cruelty

Scott contends that the record does not support a finding that he exhibited deliberate cruelty. He also asserts that serious bodily injury is inherent in murder and the depravity of this crime does not go beyond that generally associated with premeditated murder. We disagree with Scott's factual and legal conclusions.

■ RCW 9.94A.390(2)(a) permits an exceptional sentence where "[t]he defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." Deliberate cruelty consists of gratuitous violence or other conduct which inflicts physical, psychological, or emotional pain as an end in itself. *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989); *State v. Kidd*, 57 Wn. App. 95, 106, 786 P.2d 847, *review denied*, 115 Wn.2d 1010 (1990). The extreme conduct must be significantly more serious or egregious than typical in order to support an exceptional sentence. *State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied*, 110 Wn.2d 1007 (1988).

Scott's conduct went well beyond what was necessary to establish premeditated or felony murder in the first degree. The victim was elderly, weak, and had diminished mental faculties. Scott could easily have killed her by strangulation, which he did, but only after physically and sexually assaulting her. The medical examiner found that the manual and ligature strangulation were separate acts of violence. The first act of strangulation and/or any of the blows to the victim's head were sufficient evidence upon which to base a finding of premeditation. All of the other blows to the head, face, and ribs, which occurred in three different rooms and

resulted in 20 broken bones, were additional violent acts separate from the premeditation and the final strangulation.

Scott contends that the cases finding deliberate cruelty involved prolonged attacks or lingering suffering. *See State v. Harmon*, 50 Wn. App. 755, 757-59, 750 P.2d 664 (defendant cut victim's throat three times during a period extending over a number of hours and bragged that victim was "jumping around like a chicken with his head cut off"), *review denied*, 110 Wn.2d 1033 (1988); *State v. Campas*, 59 Wn. App. 561, 799 P.2d 744 (1990)[3] (defendant repeatedly bludgeoned and stabbed victim, leaving her barely alive and in pain and agony until she died the next day).

■ Here, the record supports a finding of a prolonged attack by Scott and lingering suffering by the victim. It took time to break 20 bones, strangle the victim twice, and sexually assault her. The evidence that the assaults occurred in three different rooms also suggests a prolonged attack and lingering suffering.

In sum, the record supports a finding that Scott's conduct exhibited deliberate cruelty. Deliberate cruelty is an aggravating factor which justifies an exceptional sentence as a matter of law. RCW 9.94A.390(2)(a).

### Premeditation and Multiple Injuries

Scott contends that the court's findings of multiple injuries were used to establish premeditation, and thus, cannot be used to justify an exceptional sentence. We disagree.

■ Granted, factors already considered in setting the presumptive sentencing range for the crime cannot be a basis for an exceptional sentence. *Nordby*, 106 Wn.2d at 578; *State v. Payne*, 58 Wn. App. 215, 219, 795 P.2d 134, 805 P.2d 247 (1990). However, courts repeatedly have found that infliction of multiple injuries may justify an exceptional sentence. *State v. Armstrong*, 106 Wn.2d 547, 550, 723 P.2d 1111 (1986) ("infliction of multiple injuries in the course of a second degree assault is a factor upon which a court may rely to justify an

[3]*Remanded* at 118 Wn.2d 1014 (1992) for reconsideration in light of *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991).

exceptional sentence"); *State v. Dunaway*, 109 Wn.2d at 219 (holding that multiple incidents justified an exceptional sentence where defendant shot victim, partially left the room, and returned to shoot him again, thereby inflicting multiple injuries in the course of attempted first degree murder). *See also State v. Warren*, 63 Wn. App. 477, 479, 820 P.2d 65 (1991) (where defendant was guilty of third degree assault, court held that "multiple injuries standing alone can be used to enhance a sentence"), *review denied*, 118 Wn.2d 1030 (1992); *State v. George*, 67 Wn. App. 217, 222, 834 P.2d 664 (1992) (where defendants were guilty of first degree robbery, first degree assault, and rape, repeated blows and multiple injuries to victim justified an exceptional sentence), *review denied*, 120 Wn.2d 1023 (1993); *Campas*, 59 Wn. App. at 566 (where defendant was convicted of felony murder in the first degree, court held repeated blows and multiple injuries to victim justified exceptional sentence).

In *State v. Franklin*, 56 Wn. App. 915, 786 P.2d 795 (1989), *review denied*, 114 Wn.2d 1004 (1990), the crime of attempted first degree murder was found to be established upon a showing of premeditation and the first stabbing. The second stab wound to the victim was found to be deliberate cruelty. *Franklin*, at 919.

Similarly, in the present case the first strangulation and/or any number of the blows to the head establish premeditation prior to Scott's killing of Ms. Jackson by the final strangulation. The additional blows took the attack beyond that ordinarily associated with premeditated murder, and therefore, justify the exceptional sentence on the factor of multiple injuries.

Scott also asserts that the multiple injuries merged with the murder conviction, and thus, those injuries cannot also be used to support an exceptional sentence. Again, we disagree.

Perhaps the State would have been barred from seeking convictions for homicide and assault under the merger doctrine. That determination would involve consideration of the defendant's intent from one crime to the next, whether one

crime furthered the next crime, and whether the time and place remained the same for both crimes. *State v. Collicott*, 118 Wn.2d 649, 827 P.2d 263 (1992), setting aside *State v. Collicott*, 112 Wn.2d 399, 771 P.2d 1137 (1989).

However, *State v. Drummer*, 54 Wn. App. 751, 759, 775 P.2d 981 (1989) held that torture prior to murder is not encompassed in the crime of first degree murder. Here, the murder itself occurred by strangulation. The repeated blows were additional torture, which was not encompassed by the murder.

In sum, even if the jury relied on one or more of the blows prior to the last strangulation to find premeditation, the trial court could still use the multiple injuries as an aggravating factor justifying an exceptional sentence.

### Victim Vulnerability

Scott contends that Ms. Jackson's age did not make her particularly vulnerable to this type of crime. We disagree.

An exceptional sentence may be justified where

[t]he defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

RCW 9.94A.390(2)(b).

■ Particular vulnerability has been found where the victim was elderly and the defendant young. *See George*, 67 Wn. App. at 221-22 (stating that age of 77-year-old victim, as a matter of law, justified an exceptional sentence); *State v. Hicks*, 61 Wn. App. 923, 930, 812 P.2d 893 (1991) (where defendant was 17 and victims over 70, court found particular vulnerability and exceptional sentence justified).

Here, the victim was 78, suffered from Alzheimer's disease, was in need of a cane to walk, and was in need of daily care and supervision, facts which were well known to Scott. Clearly, she was unable to protect herself from Scott. The record supports the court's finding of particular vulnerability. Particular vulnerability, as a matter of law, justifies an exceptional sentence.

### ·Position of Trust

Scott asserts that the record does not support a finding that he used his position of trust to facilitate commission of the crime. We disagree.

■ Another aggravating factor warranting departure from the sentencing guidelines is the "defendant us[ing] his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." RCW 9.94A-.390(2)(c)(iv). *See also State v. Russell*, 69 Wn. App. 237, 252, 848 P.2d 743 (finding parent's violation of trust relationship with child an aggravating sentencing factor where parent was convicted of homicide of child by abuse), *review denied*, 122 Wn.2d 1003 (1993); *State v. Creekmore*, 55 Wn. App. 852, 868-69, 783 P.2d 1068 (1989) (finding victim's extreme youth, abuse of trust, and lack·of remorse aggravating factors for the crime of homicide by abuse), *review denied*, 114 Wn.2d 1020 (1990). Here, the record supports a finding that Scott had developed a trust relationship with Ms. Jackson and used that trust to gain access to the victim's home for the purpose of killing Ms. Jackson.

Scott's mother was paid to care for Ms. Jackson. As an agent for his mother, Scott did chores for Ms. Jackson and helped with home repairs. The evidence showed that Scott had access to Ms. Jackson's home and that his entry the day of the murder was not forced. This was another proper basis for the trial court to give Scott an exceptional sentence.

### 'Defendant's Age as a Mitigating Factor

■ Scott asserts that his youth, 17 years old at the time of the crime, limited his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law," RCW 9.94A.390(1)(e),[4] and thus, the exceptional sentence was improper. This argument borders on the absurd.

---

[4]RCW 9.94A.390(1) includes the following as a mitigating factor justifying a sentence below the standard range:

"(e) The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (voluntary use of drugs or alcohol is excluded)."

Granted, teenagers are more impulsive than adults and lack mature judgment. However, Scott's conduct cannot *seriously* be blamed on his "lack of judgment", as he contends. Premeditated murder is not a common teenage vice.

1-Year Sentence for Each Year of the Victim's Life

Scott contends that the trial court improperly used the victim's age, 78 years, to arrive at the exceptional sentence of 75 years. The State did recommend a sentence of 78 years, which defense counsel (not the prosecutor) stated was 1 year for every year of the victim's life. The court's basis for the exceptional sentence was (1) deliberate cruelty, (2) the vulnerability of the victim, (3) the violation of the trust relationship, and (4) the multiple injuries. There is no evidence that the court improperly used the victim's age to determine the sentence.

## II
### CLEARLY EXCESSIVE

Scott contends that the sentence is clearly excessive because he had no prior offenses, an offender score of 0 and, even if he had had three prior first degree murder convictions, his sentencing range would only have been 411 to 548 months. In view of the aggravating factors, we do not find the sentence to be clearly excessive.

■ Once the sentencing court finds substantial and compelling reasons for imposing an exceptional sentence, the court is permitted to use its discretion to determine the precise length of the sentence. The length of an exceptional sentence is reviewed under the abuse of discretion standard. *State v. Pryor*, 56 Wn. App. 107, 118, 782 P.2d 1076 (1989) (citing *State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986), *aff'd*, 115 Wn.2d 445, 779 P.2d 244 (1990); *State v. George*, 67 Wn. App. at 227.

An exceptional sentence is "clearly excessive" (1) if it is imposed on untenable grounds or for untenable reasons, (2) if it is manifestly unreasonable, *Oxborrow*, 106 Wn.2d at 530, or (3) "if no reasonable person would impose it". *Creekmore*, 55 Wn. App. at 863 (citing *State v. Nelson*, 108 Wn.2d

491, 504-05, 740 P.2d 835 (1987)); *State v. Pascal*, 108 Wn.2d 125, 138-39, 736 P.2d 1065 (1987); *State v. Armstrong*, 106 Wn.2d at 550.

Although the standard of review regarding whether an exceptional sentence is excessive is abuse of discretion, "[t]he length of an exceptional sentence cannot come out of thin air." *Pryor*, 56 Wn. App. at 123 (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985) (reversing sentence and remanding case for resentencing where judge considered improper factors to give defendant exceptional sentence of 10 years for indecent liberties conviction), *review denied*, 105 Wn.2d 1010 (1986)). *See also State v. Delarosa-Flores*, 59 Wn. App. 514, 520, 799 P.2d 736 (1990) (reversing exceptional sentence for burglary, robbery, and rape where aggravating factors were not so "unusually compelling" to justify a sentence approximately six times the standard range), *review denied*, 116 Wn.2d 1010 (1991). "[T]he record must reflect the reasons for the particular manner in which the discretion is exercised." *George*, 67 Wn. App. at 227 (finding presence of aggravating factors and affirming exceptional sentence for brutal assault and rape of elderly victim during the course of a robbery, even though the sentencing judge had considered some inappropriate factors in determining the sentence). "[T]here must be a reasonable connection between the reasons given and the duration of the sentence." *State v. Elsberry*, 69 Wn. App. 793, 796, 850 P.2d 590 (1993) (finding no reasonable connection between the reasons given by the sentencing judge and the duration of the exceptional sentence, which was eight times the standard range, the appellate court reversed exceptional sentence for second degree assault of child by shaking) (citing *State v. Chadderton*, 119 Wn.2d 390, 399, 832 P.2d 481 (1992) and *Creekmore*, 55 Wn. App. at 877 (Forrest, J., concurring)). *But see also Creekmore*, 55 Wn. App. at 863-66 (finding that the trial court need not state any specific reason for the exact number of years imposed as long as the length of the sentence is "reasonable" in light of the egregious facts, and affirming a 720-month sentence for a man's murder of his 3-year-old

son). *See also Harmon*, 50 Wn. App. at 756 (finding the aggravating factor of deliberate cruelty and affirming 648-month sentence for first degree murder).

> Generally, [a remand to the trial court for resentencing] is necessary when the trial court places significant weight on an inappropriate factor, or where some factors are inappropriate and the exceptional sentence significantly deviates from the standard range.

*State v. Pryor*, 115 Wn.2d 445, 456, 799 P.2d 244 (1990), *aff'g* 56 Wn. App. 107, 782 P.2d 1075 (1989). *See also Dunaway*, 109 Wn.2d at 219-20. However, even where the exceptional sentence significantly deviates from the standard range and the trial court has relied in part upon some inappropriate factors, but most heavily upon valid factors, remand is not mandated when the reviewing court is confident that the trial court would impose the same sentence when it considers only the valid reasons. *Pryor*, 115 Wn.2d at 456; *State v. Fisher*, 108 Wn.2d 419, 430 n.7, 739 P.2d 683 (1987); *George*, 67 Wn. App. at 228.

Here, unlike *Pryor* and *Elsberry*, the court did not consider any inappropriate factors in determining the exceptional sentence. Rather, in the present case the record clearly supports the court's finding of numerous aggravating factors: (1) abuse of trust, (2) the victim's particular vulnerability, (3) deliberate cruelty, and (4) multiple injuries inflicted in the commission of the crime.

The rational basis for the length of the sentence can be implicit in the record. Here, that rational basis is the numerous aggravating factors found by the court. As long as the sentencing court relies solely on valid aggravating factors, that is, does not rely on any inappropriate factors, as the courts did in *Pryor* and *Elsberry*, and so long as the duration of the sentence does not exceed the statutory maximum or otherwise shock the appellate court's conscience in all the circumstances of the case being reviewed, it cannot be said that the sentence, although harsh, is so clearly excessive that no reasonable person would have imposed it. Certainly Scott received the Sentencing Reform Act of 1981's (SRA)

determinate sentencing equivalent of a life sentence for this crime. The aggravating factors are both numerous and individually and collectively egregious, however. All of the factors fall within the Legislature's own nonexclusive list of examples of valid aggravating factors. It cannot be said that the sentence is clearly excessive in light of all the purposes of the SRA.

The exceptional sentence is affirmed.

GROSSE, J., concurs.

FORREST, J. (dissenting) — I dissent. Although I agree a sentence above the standard range is appropriate in light of the aggravated facts of the crime, in my view, the record does not support the 900-month sentence imposed without explanation or justification. The case should be remanded for resentencing.

The duration of an exceptional sentence is reviewed under the abuse of discretion standard to determine whether it is clearly excessive.[5] Such a standard need not preclude effective review. The proper exercise of discretion in imposing this sentence requires a comparison with the facts and duration of other sentences for the same crime; in short, a proportionality analysis.[6] The current review of the duration of an exceptional sentence as expressed in the majority opinion is so deferential that it is effectively no review at all but

---

[5]*State v. Oxborrow*, 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); *State v. Armstrong*, 106 Wn.2d 547, 551-52, 723 P.2d 1111 (1986); *State v. George*, 67 Wn. App. 217, 227, 834 P.2d 664 (1992), *review denied*, 120 Wn.2d 1023 (1993).

I continue to believe this is an inappropriate standard for the reasons stated in my concurring opinion in *State v. Creekmore*, 55 Wn. App. 852, 873, 783 P.2d 1068 (1989) (Forrest, J., concurring), *review denied*, 114 Wn.2d 1020 (1990), and for the reasons forcefully articulated by Justice Goodloe in his dissent in *State v. Armstrong, supra.*

[6]*State v. Solberg*, 122 Wn.2d 688, 861 P.2d 460 (1993) was published just as this dissent was being placed in circulation. *Solberg* rejected a proportionality analysis evaluating the *grounds* for an exceptional sentence in a drug case. This holding does not preclude utilizing a proportionality analysis in examining the *duration* of a very long exceptional sentence to determine whether it is exces-

merely a rubber stamp approval.[7] Such a procedure is contrary to the philosophy of the Sentencing Reform Act of 1981 (SRA), fails to provide equal protection to similarly situated defendants, and needs correction.

The abuse of discretion standard of review is applied to a wide variety of trial court rulings.[8] The generality of the term obscures the fact that some decisions are scrutinized much more closely than others. A trial court must make decisions in the course of a trial for which there is no absolutely right answer and which, individually, have a very small impact on the conduct of a trial. Thus, rulings on continuances, the scope of cross examination and the like are reviewed for reasonableness, and on appeal great deference is given to the trial judge's ruling and a case will not be reversed unless a serious error is made. If appellate courts reversed every time they found such rulings questionable, the system would be overwhelmed with retrials at great prejudice and expense to the parties and to the public.

Other decisions may have a much greater impact upon the outcome of a trial. Such rulings are subjected to more strin-

---

sive. Chief Justice Andersen, the author of *Solberg*, has previously recognized that such sentences merit special attention.

> [A]s a practical matter, an exceptional sentence of no more than twice the length of the presumptive sentence will on appellate review be less likely to be held to constitute an abuse of discretion than one which probes the outermost limits of the statutory maximum.

*State v. Oxborrow*, 106 Wn.2d at 538-39 (Andersen, C.J., concurring).

[7] As Justice Goodloe accurately predicted in 1986, under this deferential standard of review an appellate court will "rarely, if ever," overturn an exceptional sentence because of its length. *State v. Armstrong*, 106 Wn.2d at 553 (Goodloe, J., dissenting). In the ensuing 7 years, between 300 and 400 exceptional sentences have been imposed per year, but we find only three reversals for duration. *State v. Elsberry*, 69 Wn. App. 793, 850 P.2d 590 (1993); *State v. Delarosa-Flores*, 59 Wn. App. 514, 799 P.2d 736 (1990), *review denied*, 116 Wn.2d 1010 (1991); *State v. Pryor*, 56 Wn. App. 107, 782 P.2d 1076 (1989), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990).

[8] Such rulings include: vacating defaults, setting limits on cross examination, ruling on various evidentiary matters, imposing sanctions for discovery violations under CR 37, determining the amount of attorney fees under various statutory provisions and CR 11, granting or denying new trials, and giving jury instructions.

gent scrutiny. Thus, for instance, a decision to admit expert testimony, evidence of prior bad acts, or a defendant's prior convictions, is structured by court rule and case law. On review, an appellate court will more readily find an abuse of discretion if a trial court has failed to consider the required factors in making its decision.[9] Despite the undesirable consequences, a new trial will be ordered if the erroneous decision, even though an exercise of discretion, was critical to the decision in the case.

A trial court's determination of the length of an exceptional sentence may be the most significant exercise of discretion in the entire trial for a criminal defendant. Exceptional sentences are relatively rare.[10] Few, appeals focus on the propriety of the length of the sentence. Remand, if necessary, would normally not require additional testimony, but merely argument by counsel and further consideration by the trial court. The vital importance to the defendant of the duration of a sentence, and the very modest burden on the system a remand would occasion, require the highest degree of scrutiny. An award of attorney fees is given more searching and careful review than the length of an exceptional sentence.[11]

The top of the standard range for Scott was 320 months. The court imposed a 900-month (75-year) sentence on a 17-

---

[9]To structure the trial court's exercise of discretion, appellate courts have formulated guidelines. *See, e.g., State v. Ryan*, 103 Wn.2d 165, 691 P.2d 197 (1984) (factors to determine reliability of hearsay statements of child victims of sexual abuse); *State v. Holland*, 98 Wn.2d 507, 656 P.2d 1056 (1983) (factors to consider when determining whether to waive juvenile jurisdiction); *State v. Alexis*, 95 Wn.2d 15, 19, 621 P.2d 1269 (1980) (factors to weigh in determining admissibility of prior convictions under ER 609); *State v. Kendrick*, 47 Wn. App. 620, 736 P.2d 1079 (factors to determine whether danger of unfair prejudice substantially outweighs probative value of evidence), *review denied*, 108 Wn.2d 1024 (1987).

[10]For example, in 1992, a total of 16,554 felony sentences were imposed but only 372 of these were above the standard range. *See* Washington Sentencing Guidelines Comm'n, *A Statistical Summary of Adult Felony Sentencing* table 10 (1992).

[11]*See, e.g., Scott Fetzer Co. v. Weeks*, 122 Wn.2d 141, 859 P.2d 1210 (1993); *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983).

year-old defendant, very likely, although not certainly, a life sentence.[12] Yet, the trial court gave *no* reason or explanation for the length of the sentence nor any suggestion of why 440 months (top of the standard range plus 10 years), 560 months (top of the standard range plus 20 years) or 640 months (double the top of the standard range) would not be fair and proportional punishment for the crime. In my view, the failure to offer any reasoning or explanation is an egregious abuse of discretion requiring remand.

> Abuse of discretion may be found when discretion is not exercised. *State v. Pettitt*, 93 Wn.2d 288, 296, 609 P.2d 1364 (1980). Although we review the court's decision for abuse of discretion, [*State v.*] *Oxborrow*, [106 Wn.2d 525,] at 530 [723 P.2d 1123 (1986)], the term of the exceptional sentence must nevertheless have some tenable basis in the record. It is difficult to determine from this record any reason for the sentencing court imposing the maximum term. In the absence of reasons, the present record gives the appearance the trial court failed to exercise any discretion at all. "[T]he length of an exceptional sentence cannot come out of thin air." *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986).

*State v. Pryor*, 56 Wn. App. 107, 123, 782 P.2d 1076 (1989), *aff'd*, 115 Wn.2d 445, 799 P.2d 244 (1990).

When making many routine discretionary decisions as, for example, the admission of a prior conviction pursuant to ER 609, the trial court is required to place its reasons on the record.[13] Yet the majority is untroubled by the failure of the trial court to explain its reasons in this much more serious and weighty decision. It merely says, "[t]he rational basis for the length of the sentence can be implicit in the record." Majority, at 221. To me, this suggests that this court is acting as a sentencing court and not a reviewing court.[14]

---

[12]At age 18, when Scott was sentenced, his life expectancy was 54.18 years. 6 Wash. Prac. app. B (1989).

[13]*State v. Fowler*, 114 Wn.2d 59, 68, 785 P.2d 808 (1990).

[14]Although under a different standard of review, this court's examination of the record might be appropriate, such action is inconsistent with the standard that the court is applying. Such a procedure in reviewing an exceptional sen-

Clearly, the majority would also approve a sentence of 640 months, yet the record would be the same. If the same record would justify both a sentence of 640 months and a sentence of 900 months, to me, it is plain that the record alone does not contain a "rational basis". Basic notions of justice require and, indeed, the philosophy of the SRA mandates, some rational explanation for the selection of a sentence of 75 years for the 17-year-old defendant, 21 years longer than a sentence of double the maximum of the standard range and very possibly a life sentence.

How is this to be done? Aggravating factors standing in isolation simply cannot themselves give the answer. In this case, the trial court should have compared the facts of this crime with the facts of at least some of the other cases in which exceptional sentences were imposed for murder in the first degree.[15]

---

tence was unequivocally rejected in *State v. Hobbs*, 60 Wn. App. 19, 26, 801 P.2d 1028 (1990), *review denied*, 116 Wn.2d 1022 (1991):

> The imposition of an exceptional sentence is a decision for the sentencing court to make "in the exercise of *its* discretion . . .". (Italics ours.) RCW 9.94A-.390. We do not have the discretion to decide that an exceptional sentence *should* be sustained because we have noted facts in the record which might have supported the sentence, but which the trial court did not rely on at all. Thus, we do not consider Hobbs' alternative theory.

(Footnote omitted.)

[15]In *State v. Harmon*, 50 Wn. App. 755, 750 P.2d 664, *review denied*, 110 Wn.2d 1033 (1988), the court upheld an exceptional sentence of 648 months. The defendant bragged he had cut the victim's neck at least three times and that he was " 'jumping around like a chicken with his head cut off — running around the house and trying to hold onto his throat' ". *Harmon*, 50 Wn. App. at 756. After the victim collapsed, the defendant waited and slit his throat again, then waited for an hour until the body stopped twitching and then cut his throat yet again. In *State v. Russell*, 69 Wn. App. 237, 848 P.2d 743, *review denied*, 122 Wn.2d 1003 (1993), the court held an 828-month sentence for homicide by abuse, which the court stated is equal in seriousness to first degree murder, was not clearly excessive. The standard range was 250 to 333 months. In *State v. Smith*, 64 Wn. App. 620, 825 P.2d 741 (1992), the court upheld a 500-month exceptional sentence but did not address the clearly excessive issue. In *State v. Stuhr*, 58 Wn. App. 660, 794 P.2d 1297 (1990), *review denied*, 116 Wn.2d 1005 (1991), the court upheld a 425-month sentence for first degree murder where the standard range was 250 to 333 months, but did not address the clearly excessive issue.

A consideration of such cases would assist the trial court in its heavy responsibility of exercising discretion when the defendant faces the possibility of many years in prison. Consideration would substitute an informed judgment for a gut reaction. Such a process would also permit meaningful appellate review by focusing on the comparison of factual situations to assess whether the trial court's result was an abuse of discretion. To rationally decide whether a sentence is "excessive", there must be a standard. Analogous sentences furnish that standard and should be considered by this court. It is important to note that this does not assume that any of the sentences to which a comparison is made are necessarily ideal or the only sentences that would be approved on appeal. However, the sentences represent the considered judgment of another trial judge dealing with the same class of crime and imposing an exceptional sentence, and the judgment of an appellate court, albeit under an excessively deferential standard, that the sentence is not excessive. Such comparison would engender a comparison of the aggravating factors enumerated, and beyond that to consideration of the facts which make the same crime more or less reprehensible.

Unless appellate courts go beyond the perfunctory statement that "we are unable to say no reasonable judge would impose such a sentence"[16] and actually discuss the various aggravating elements of real cases, we will never develop the common law of sentencing that was contemplated by the SRA.

Professor Boerner in the leading treatise on the SRA in Washington recognized:

> The Legislature realized the impossibility of establishing statutory limitations for cases in which, by definition, substantial and compelling differences from the norm exist, and relied instead on *judicial review* to insure that the necessary discretion granted to sentencing-judges to respond to the individual special case not result in unjustified disparity, case-to-case and court-to-court.

---

[16]I attach as an appendix my objections to the majority's repetition as part of the test for an excessive sentence the phrase "no reasonable person would impose". Majority, at 219.

(Italics mine.) D. Boerner, *Sentencing in Washington* § 9.33, at 9-72 (1985). He goes on to suggest essentially the approach I believe is required; namely, a proportionality analysis derived by analogy from the analysis required when a death sentence is imposed. *See* RCW 10.95.130; *see also Coker v. Georgia*, 433 U.S. 584, 592, 53 L. Ed. 2d 982, 97 S. Ct. 2861 (1977) (using a proportionality analysis, a sentence of death was held to be "grossly disproportionate and excessive punishment for the crime of rape"). Professor Boerner notes that while a proportionality analysis is most frequently utilized to review death sentences, such analysis has also been used to review sentences in noncapital cases.[17] Such analysis is essential to this sentence:

> [A]s a practical matter, an exceptional sentence of no more than twice the length of the presumptive sentence will on appellate review be less likely to be held to constitute an abuse of discretion than one which probes the outermost limits of the statutory maximum.

*State v. Oxborrow*, 106 Wn.2d at 538-39 (Andersen, J., concurring.) This 75-year sentence probes the outermost limits of the statutory maximum of life.

The Supreme Court's discussion in *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980) supports the use of a proportionality analysis:

> In recent years, the proportionality doctrine has been expanded in noncapital cases to help courts decide whether sentences of ordinary imprisonment are commensurate with the crimes for which such sentences are imposed. While not expressly adopted by the judiciary in Washington, the principle is implied in some of our cases. Moreover, the legislature has recognized the principle in its most recent version of the criminal code, RCW Title 9A:
>
> > (1) The general purposes of the provisions governing the definition of offenses are:
> >
> > . . .
> > (d) To differentiate on reasonable grounds between serious and minor offenses, and to prescribe proportionate penalties for each.
>
> RCW 9A.04.020(1)(d).

---

[17] D. Boerner, *Sentencing in Washington* § 9.22, at 9-62 (1985).

As the State points out, the application of proportionality standards to a specific set of facts is not an easy undertaking. Proportionality is an illusive concept which has developed gradually in response to society's changes. As the United States Supreme Court has said in reference to the Eighth Amendment, its scope is not static; rather, it "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 2 L. Ed. 2d 630, 78 S. Ct. 590 (1958).

In attempting to employ proportionality analysis, courts have sought to use objective standards to minimize the possibility that the merely personal preferences of judges will decide the outcome of each case.

We have previously indicated that the standards enunciated in *Hart* [*v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 39 L. Ed. 2d 495, 94 S. Ct. 1454 (1974)] may be useful in analyzing a claim of cruel punishment. In *Hart*, the court considered four factors to determine whether a life sentence was disproportionate to the underlying offenses in a habitual criminal case. The factors were: (1) the nature of the offense; (2) the legislative purpose behind the habitual criminal statute; (3) the punishment defendant would have received in other jurisdictions for the same offense; and (4) the punishment meted out for other offenses in the same jurisdiction. *Hart*, at 140-43. Subjected to that analysis, the court found the sentence of life imprisonment "wholly disproportionate to the nature of the offenses he committed, . . ."[.] *Hart*, at 143.

(Footnote and citations omitted.) *State v. Fain*, 94 Wn.2d at 396-97.[18]

Justice Cardozo's famous statement as to judicial discretion applies with particular force to discretion in fixing the length of an exceptional sentence:

---

[18]Although made in considering the legality of a death sentence for juveniles, the following statement by Justice Utter is equally applicable to this juvenile's 75-year sentence:

"To make this determination, we must compare the facts and circumstances of Furman's crime with those of others who have committed aggravated first degree murder while still juveniles. This involves taking into account the presence or absence of aggravating factors. *See* [*State v.*] *Lord*, 117 Wn.2d [829,] 940[, 822 P.2d 177 (1991) (Utter, J., dissenting), *cert. denied*, 113 S. Ct. 164 (1992)] (citing [*In re*] *Jeffries* II, 114 Wn.2d [485, 789 P.2d 731 (1990)] at 490). Yet we must do more than compare numbers of victims or aggravating circumstances. We must engage in a 'careful examination of the circumstances of the crimes and the defendants' personal characteristics.' *Jeffries* II, 114 Wn.2d at 490 (citing *State v. Rupe*, 108 Wn.2d 734, 768-70, 743 P.2d 210 (1987), *cert. denied*, 486 U.S.

The judge, even when he is free, is still not wholly free. He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. He is to draw his inspiration from consecrated principles. He is not to yield to spasmodic sentiment, to vague and unregulated benevolence. He is to exercise a discretion informed by tradition, *methodized by analogy,* disciplined by system, and subordinated to "the primordial necessity of order in the social life." Wide enough in all conscience is the field of discretion that remains.

(Footnote omitted.) Cardozo, The Nature of the Judicial Process, Yale University Press 141 (1921).

(Italics mine.) *Rehak v. Rehak*, 1 Wn. App. 963, 965, 465 P.2d 687 (1970) (quoting *State v. Potts*, 1 Wn. App. 614, 620, 464 P.2d 742 (1969)).

I am firmly convinced that the present review of the duration of exceptional sentences constitutes an abdication of the appellate court's statutory responsibility to review the duration of an exceptional sentence to determine whether it is "excessive".

### APPENDIX

The classic statement of the standard of review of discretionary rulings is:

where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

*State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The majority, however, also relies on a test that finds a sentence to constitute an abuse of discretion " 'if no reasonable person would impose it". Majority, at 219 (quoting *State v. Creekmore*, 55 Wn. App. 852, 863, 783 P.2d 1068 (1989), *review denied*, 114 Wn.2d 1020 (1990)). I cannot fault the majority because the use of this phrase has been sanctioned by the Supreme Court. *See, e.g., State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987); *State v. Pascal*, 108 Wn.2d 125, 736 P.2d 1065 (1987); *State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986). Nonetheless I would urge that it be abandoned.

The issue is not whether the judge is unreasonable, but whether the decision is unreasonable. Trial judges have frequently been reversed for their exercise of discretion by the Washington appellate courts and I do

---

1061 (1988)); *State v. Rice*, 110 Wn.2d 577, 625-28, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910 (1989)." *State v. Furman*, 122 Wn.2d 440, 462, 858 P.2d 1092 (1993) (Utter, J., concurring).

not believe that all of such judges were unreasonable. Yet, if the test is correct, the judge must be "unreasonable". One need not be an unreasonable judge to err in exercising discretion in imposing a sentence. This formula makes an already deferential "abuse of discretion" standard even more deferential because reversal labels the judge making the decision an unreasonable person.

The phrase has come into sentencing law, as far as I can ascertain, without examination or analysis. The history appears to be as follows: In *Delno v. Market St. Ry.*, 124 F.2d 965 (9th Cir. 1942) the court found no abuse of discretion in the trial court's dismissal of a petition for a declaratory judgment. In the course of the decision the following language was used: "[d]iscretion, in this sense, is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." *Delno*, at 967. There is no analysis of the phrase nor any citation of authority. The phrase entered Washington jurisprudence in *Rehak v. Rehak*, 1 Wn. App. 963, 465 P.2d 687 (1970), where the court quoted from *Delno* in upholding a trial court's property award as not constituting abuse of discretion. The phrase entered Washington criminal law in *State v. Hurst*, 5 Wn. App. 146, 148, 486 P.2d 1136 (1971) (citing *Rehak*, at 965), where the court made the following statement:

> We have stressed the necessity for the record to reveal a basis for the exercise of the discretionary determination and have indicated where this basis is present, we will hold that discretion is abused only where it can be said no reasonable man would take the view adopted by the trial court.

The phrase is repeated in *State v. Harris*, 10 Wn. App. 509, 513, 518 P.2d 237 (citing *Hurst*, 5 Wn. App. at 148), *review denied*, 83 Wn.2d 1013 (1974). In defining "clearly excessive", the court in *State v. Strong*, 23 Wn. App. 789, 599 P.2d 20 (1979) cited the classic statement of the abuse of discretion standard set forth in *State ex rel. Carroll v. Junker*, 79 Wn.2d at 26, but added the phrase "or an action that no reasonable person would have taken" to the definition. *Strong*, 23 Wn. App. at 794 (citing *Harris*).

Finally, the court in *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986) quoted the following language from *State v. Strong*, 23 Wn. App. at 794.

> The term "clearly excessive" is not defined in the Juvenile Justice Act of 1977 and, therefore, must be given its plain and ordinary meaning. Action is excessive if it "goes beyond the usual, reasonable, or lawful limit." Thus, for action to be *clearly* excessive, it must be shown to be clearly unreasonable, *i.e.*, exercised on untenable grounds or for untenable reasons, or an action that no reasonable person would have taken.

The court in *State v. Armstrong*, 106 Wn.2d 547, 723 P.2d 1111 (1986) repeated this language and cited *Oxborrow*. *State v. Pascal*, 108 Wn.2d

125, 736 P.2d 1065 (1987) repeated the phrase and cited *Armstrong*. *State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987), used the phrase, this time citing to *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 599 P.2d 1289 (1979). *Averbeck* was reviewing the court's vacation of an order of default and cited to *Morgan v. Burks*, 17 Wn. App. 193, 563 P.2d 1260 (1977). *Burks* cites *State v. Batten*, 16 Wn. App. 313, 556 P.2d 551 (1976). *Batten* quotes *State ex rel. Carroll v. Junker, supra*, but then adds the "no reasonable man" standard to the definition of abuse of discretion, citing *State v. Birdwell*, 6 Wn. App. 284, 299, 492 P.2d 249, *review denied*, 80 Wn.2d 1009, *cert. denied*, 490 U.S. 973 (1972). *Batten*, 16 Wn. App. at 314. *Birdwell* cites to *Hurst*. So the phrase both as used in *Oxborrow* and as independently used in *Nelson* can, based on the cited authorities, be traced back through *Hurst* to *Delno*. I think this pedigree is less than compelling.

Although repeated many times, as far as I can ascertain, no Washington court has examined the desirability of the standard or considered whether, even if it were appropriate in civil cases, from whence it came, it should apply in reviewing the duration of an exceptional sentence in criminal cases.

In my view, the *State ex rel. Carroll v. Junker, supra*, test is an appropriate standard for reviewing discretionary rulings, and it would be desirable to eliminate the "no reasonable person" alternative formulation.

Review granted at 124 Wn.2d 1001 (1994).